OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Central to this appeal by an insured against its insurers are two important law questions:
 
 first,
 
 whether the insured (or the insurers) should have the burden of proving that the damage was (or was not) the result of an “accident” or “occurrence” within the meaning of the policies, and
 
 second,
 
 how any liability should be allocated. This case presents something of a time capsule in that nineteenth century technology polluting twentieth century properties will have significant twenty-first century financial ramifications. For approximately 60 years— from 1873 to 1933 — Consolidated Edison’s corporate predecessors owned and operated a manufactured gas plant in Tarry-town, New York. The site was later sold to Anchor Motor Freight, Inc. In 1995, Anchor notified Con Edison that, during an investigation it was conducting pursuant to Department of Environmental Conservation (DEC) requirements, it discovered contamination at the site. Anchor alleged that the manufactured gas plant caused the contamination and demanded that Con Edison participate in the investigation and remediation.
 

 After its own investigation, Con Edison entered into an agreement with the DEC to clean up the site, and commenced this declaratory judgment action against 24 insurers that had issued it general liability policies between 1936 and 1986, demanding defense and indemnification for environmental damages arising from the contamination caused by the Tarry-town plant. The policies that were the subject of the complaint were issued in layers, and provided for a self-insured retention
 
 *216
 
 in the amount of $100,000 per year from 1936 to 1961, and $500,000 per year from 1961 to 1986. Con Edison’s total coverage in excess of the retention ranged between $2 million and $49.5 million during each of the relevant years.
 

 Defendant Travelers Indemnity Company, which provided coverage for liability in excess of $20 million from 1964 to 1970, moved for dismissal on the ground that, as to it, the claim was nonjusticiable. Travelers argued that where there is both continuous, progressive property damage and successive insurance, liability should be allocated pro rata among the insurers. Applying a pro rata allocation to damage estimates most favorable to Con Edison, Travelers contended that its excess insurance policies would not be reached in any given policy year. Nineteen other defendants cross-moved to dismiss the complaint against them on the same ground. In response, Con Edison argued against pro rata allocation, asserting that it should be permitted to allocate all liability to any defendant for any one year it elects within the coverage period.
 

 Supreme Court dismissed the action as against Travelers and 13 other defendant insurers who sought dismissal for nonjusticiability, and dismissed the action as against certain policies issued by Century Insurance Company, Home Insurance Company, New England Insurance Company, St. Paul Fire and Marine Insurance Company and Employers Insurance of Wausau on the same ground. The court ruled that only for the purposes of determining the motion to dismiss, it would prorate the damages and dismiss all policies that would not be reached by that method. The court took the highest projection of damages by Con Edison’s expert ($51 million), divided by the number of years named in the complaint (50), and thus determined that policies that attach at levels above $1.1 million were nonjusticiable because they would not be reached even if Con Edison prevailed at trial. As the court stated:
 

 “Here, we have policies from 24 insurers that can be called upon to answer for the claim, all of which are overlapping. The damages cannot be attributed to any specific year or years because there is no documentation nor are there any witnesses that address specific discharges. What is known is that the damages for later years is less than earlier years, because the amount of pollution has diminished over time. Under the circumstances * * * it would be inequitable to put the parties to the
 
 *217
 
 expense of trying claims under excess policies issued in later years, when those policies would not be reached if pro rata allocation is applied.”
 

 The court added, “[t]his necessarily is not the formula that I will use at trial since both the plaintiff and the defendants should have an opportunity to explore the issue of allocation to the plaintiff based upon a complete record and then the formula can be modified to conform to the proof.” Con Edison appealed from that order.
 

 In the meantime, all remaining defendants except Home, Lloyd’s and St. Paul settled, and the case proceeded to trial as to those defendants. At trial, Con Edison contended that because the coverage language requiring an “accident” or “occurrence” operated to exclude coverage for intended damage, the burden of proving the damage was intended should be assigned to the insurers. The Trial Judge disagreed:
 

 “The problem I see with that is the burden of the policy holder to establish that the damage was caused by an accident. It seems to me that the opposite of accidental is intentional, so it seems to me that I think that this is not an exclusion being asserted by the insurance company but a claim being asserted by the policy holder. I think the policy holder has the burden of proof to establish an accident did in fact occur, that is that the damage was not an intentional act. I will so charge the jury.”
 

 The jury found that there was property damage at the site during the years that the three defendants’ policies were in effect, but that the property damage was not the result of an “accident” or “occurrence,” and thus there was no coverage. Con Edison appealed, arguing that the court erred in assigning it the burden of establishing that the property damage was the result of an “accident” or “occurrence.”
 

 Both as to allocation and as to burden of proof, the Appellate Division affirmed. In light of the jury verdict in favor of the insurers, the Appellate Division held that the appeal from the pretrial order dismissing claims against several of the insurers was moot as to all of the policies similar in language to those that went to trial, and to the extent the language of some of the policies was different the trial court properly prorated the damages over the 50-year period. We now affirm.
 

 
 *218
 
 Burden of Proof
 

 Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage
 
 (see Northville Indus. Corp. v National Union Fire Ins. Co.,
 
 89 NY2d 621, 634 [1997];
 
 Technicon Elec. Corp. v American Home Assur. Co., 74
 
 NY2d 66, 73-74 [1989]). Is the issue before us, then, a matter of
 
 coverage
 
 (placing the burden on Con Edison to establish an accident or occurrence) or a matter of
 
 exclusion
 
 (placing the burden on the insurers to establish that the resulting property damage was intended)? The answer to that question centers on the language of the policies.
 

 The Lloyd’s, St. Paul and Home policies that were the subject of the trial contained substantially similar language. The Lloyd’s policies, in effect from 1936 to 1944, open with an undertaking to pay Con Edison’s liability “for damage to or destruction of property of others * * * caused by accident occurring during the period * * *.” “Accident” is defined as “an accident or series of accidents arising out of one event or occurrence.” The St. Paul policies, in effect from 1944 to 1961, also provide in the opening paragraph for indemnification for liability “by reason of damage to or destruction of property arising from or growing out of any accident occurring during the period * * “Accident” is defined as “each and every accident or event or series of accidents or events arising from the same occurrence.” The Home policies, in effect from 1961 to 1970, under the heading “Coverage,” provide indemnification for liability “for damages * * * on account of * * * property damage, caused by or arising out of each occurrence.” “Occurrence” is defined as “an event, or continuous or repeated exposure to conditions, which causes injury, damage or destruction during the policy period.”
 

 Thus, each of the policies speaks of damages caused by or arising from either an “accident” or an “occurrence.” None of the policies contains an exclusion for intended or expected harm.
 

 Con Edison argues that compelling it to prove that property damage is a result of an accident or occurrence forces it to prove a negative — that it did not intend to cause the property damage. Relying on several Appellate Division decisions, as well as a Second Circuit decision applying New York law, Con Edison urges that the effect of the language, not its placement in the policy, should determine assignment of the burden of proof. Thus, Con Edison continues, because the terms “ac
 
 *219
 
 cident” and “occurrence” in the coverage language have the effect of excluding coverage for intended and expected harms, once it proved property damage during the policy period the insurers should have had the burden of proving that the property damage was intended or expected.
 

 The insurers counter that there is no coverage under the policies unless there is an “accident” or “occurrence,” that they are not seeking to invoke any exclusion and thus that the trial court correctly assigned Con Edison the burden of proof.
 

 In policies that actually define “accident” or “occurrence” as “unintended or unexpected,” courts have divided on whether the insured bears the burden of proving that the damage was unintended, or whether the insurer has the burden of proving that the damage was intended and is thus excluded
 
 (compare State v CNA Ins. Cos.,
 
 779 A2d 662, 671 [Vt 2001]
 
 and Carter-Wallace, Inc. v Admiral Ins. Co.,
 
 154 NJ 312, 330, 712 A2d 1116, 1126 [1998] [burden on insurer]
 
 to Queen City Farms v Central Natl. Ins. Co. of Omaha,
 
 126 Wash 2d 50, 71, 882 P2d 703, 715 [1994]
 
 and Aetna Cas. & Sur. Co. v Dow Chem. Co.,
 
 28 F Supp 2d 421, 426 [ED Mich 1998] [burden on insured]).
 

 Although the policies at issue do not explicitly define “accident” or “occurrence” as unintended or unexpected, Con Edison argues that because the practical effect of those coverage terms is to create an exclusion for intended harm, the burden of proof should be on the insurers. Indeed, the United States Court of Appeals for the Second Circuit reached that conclusion in
 
 Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.
 
 (73 F3d 1178 [2d Cir 1995]). Applying what it perceived to be New York law, the court concluded that the policy’s definition of the term “occurrence” as an unintended event operated as an exclusion, and thus the insurer had the burden of proving that the damages were caused intentionally. The court reached that result based on the principle that the effect of policy language, not its placement, controls allocation of the burden of proof
 
 (Stonewall Ins. Co.,
 
 73 F3d at 1205 [citing
 
 Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co.,
 
 103 AD2d 60, 64 (1984)]).
 

 In our view, the contention that the requirement of an “accident” or “occurrence” itself operates as an exclusion is unpersuasive.
 
 Any
 
 language providing coverage for certain events of necessity implicitly excludes other events. Indeed, virtually all of the language in the policies following the initial grant of coverage has the effect of limiting the scope of coverage in one way or another
 
 (see
 
 Abraham, Environmental Liability Insurance Law, at 140-141 [1991]).
 

 
 *220
 
 Insurance policies generally require “fortuity” and thus implicitly exclude coverage for intended or expected harms. Insurance Law § 1101 (a) (1) itself defines “insurance contract” as: “any agreement * * * whereby one party, the ‘insurer’, is obligated to confer benefit of pecuniary value upon another party, the ‘insured’, * * * dependent upon the happening of a fortuitous event * * A “fortuitous event” is defined as: “[A]ny occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party.” (§ 1101 [a] [2].) Thus, the requirement of a fortuitous loss is a necessary element of insurance policies based on either an “accident” or “occurrence.” The insured has the initial burden of proving that the damage was the result of an “accident” or “occurrence” to establish coverage where it would not otherwise exist
 
 (see Northville Indus.,
 
 89 NY2d at 634). Once coverage is established, the insurer bears the burden of proving that an exclusion applies.
 

 Especially in the environmental pollution context, such a result “provides the insured with an incentive to strive for early detection that it is releasing pollutants into the environment”
 
 (Northville Indus.,
 
 89 NY2d at 634). In addition, it “appropriately places the burden of proof on the party having the better and earlier access to the actual facts and circumstances surrounding the discharge,” including information about its own intentions and expectations
 
 (id.).
 

 Thus we conclude that the trial court and Appellate Division correctly placed the burden of proof on Con Edison.
 

 The Jury Questions
 

 Con Edison alternatively contends that the verdict sheet improperly focused the jury on whether the
 
 acts causing the property damage
 
 were intentional, rather than on whether the
 
 resulting property damage
 
 was intended. The questions at issue are Jury Questions 3 and 5, which asked, “Was the property damage the result of an accident?” and Jury Question 7, which asked, ‘Was the property damage the result of an occurrence?” Although Con Edison does not contest that the jury charge as a whole was correct, it urges that the jury questions were a fundamental misstatement of the issue and necessitate a new trial.
 

 The Trial Judge instructed the jury that there “can be accidental results of intentional acts, thus, the term ‘accident’ or, in this case, ‘occurrence’ might apply even where the resulting damage was unintended, even though the acts that caused the
 
 *221
 
 damage were, in fact, intentional.” After less than an hour of deliberation, the jury sent out a note asking for “the legal definition of property damage and accident/occurrence.” The court then reread the charge, and the jury resumed its deliberations.
 

 The jury questions are a clear and simple statement of the issue, importing the language of the policies, and in our view were not erroneous. Further, because the relevant instruction on the issue, given twice, was an indisputedly accurate statement of the law, we conclude that any conceivable lack of clarity in the jury questions was harmless
 
 (see People v Piazza,
 
 48 NY2d 151, 165 [1979]).
 

 Allocation
 

 We next consider whether the trial court properly prorated the estimated prospective damages for purposes of the motion to dismiss.
 

 Travelers argues that, in light of the jury verdict that the property damage was not the result of an accident or occurrence, appeal of the pretrial ruling dismissing many of the insurers is moot. Con Edison counters that, under the different policy language of four of the dismissed insurers — which we do not consider — the insurers, rather than Con Edison, would have had the burden of proving at trial that the damage was intended. In light of the jury verdict, the appeal from the pretrial nonjusticiability ruling is moot as to all of the policies that contained the same language as the policies that went to trial. However, as the Appellate Division correctly noted, to the extent that some of the policies contained different policy language which arguably might have placed the burden of proof at trial on the insurers to establish that Con Edison intentionally caused property damage, the appeal is not moot.
 

 Where, as here, an alleged continuous harm spans many years and thus implicates several successive insurance policies, courts have split as to whether each policy is liable for the entire loss, or whether each policy is responsible only for a portion of the loss. This is a matter of first impression for this Court, though federal courts have predicted New York’s answer
 
 (see e.g. Sybron Transition Corp. v Security Ins. of Hartford,
 
 258 F3d 595 [7th Cir 2001];
 
 Olin Corp. v Insurance Co. of N. Am.,
 
 221 F3d 307 [2d Cir 2000]).
 

 In determining a dispute over insurance coverage, we first look to the language of the policy
 
 (see Breed v Insurance Co. of N. Am.,
 
 46 NY2d 351, 354 [1978]). We construe the policy in a
 
 *222
 
 way that “affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect”
 
 (Hooper Assoc. v AGS Computers,
 
 74 NY2d 487, 493 [1989]).
 

 Here, the dispute centers on two policy terms: “all sums” and “during the policy period.” In the words of a representative Travelers policy:
 

 “1. Coverage
 

 “To indemnify the insured for
 
 all sums
 
 which the insured shall be obligated to pay by reason of the liability
 

 (a) imposed upon the insured by law, or
 

 (b) assumed by the insured * * *, for damages, direct or consequential, and expenses, all as more fully defined by the term ultimate net loss, on account of* * * property damage, caused by or arising out of each occurrence. * * *
 

 “3. Policy Period:
 

 “This policy applies only to ‘occurrences’ as defined herein, happening
 
 during the policy period.
 
 * * *
 

 “Definitions * * *
 

 “4. Occurrence
 

 “The term ‘Occurrence’ wherever used herein, shall mean an event, or continuous or repeated exposure to conditions, which causes injury, damage or destruction
 
 during the policy period.
 
 All such exposure to or events resulting from substantially the same general conditions
 
 during the policy period
 
 shall be deemed one occurrence” (emphasis supplied).
 

 Con Edison urges that it should be permitted to collect its total liability — “all sums” — under any policy in effect during the 50 years that the property damage occurred, up to that policy’s limit
 
 (see, e.g., Koppers Co. v Aetna Cas. & Sur. Co.,
 
 98 F3d 1440 [3d Cir 1996];
 
 Keene Corp. v Insurance Co. of N. Am.,
 
 667 F2d 1034 [DC Cir 1981]). In a subsequent action, the indemnifying insurer could then seek contribution from the other insurers who also provided coverage during the relevant period. This is referred to as “joint and several allocation,” by analogy to joint and several tort liability.
 

 The insurers, by contrast, argue that a straightforward reading of the phrase “during the policy period” limits an insurer’s
 
 *223
 
 liability to “all sums” incurred by the insured “during the policy period.” Under this reading, referred to as “pro-rata allocation,” the liability is spread among the policies (see,
 
 e.g., Olin Corp.,
 
 221 F3d 307;
 
 Insurance Co. of N. Am. v Forty-Eight Insulations,
 
 633 F2d 1212 [6th Cir 1980]).
 

 While Con Edison points to precedents of this Court in support of its position, the cases do not in fact support joint and several allocation. In
 
 York-Buffalo Motor Express v National Fire & Mar. Ins. Co.
 
 (294 NY 467 [1945]), where two insurers provided concurrent coverage for a car accident, we allowed the insured to recover the whole amount from either insurer. The present case, however, involves multiple successive insurers and a continuous harm. In
 
 Continental Cas. Co. v Rapid-American Corp.
 
 (80 NY2d 640 [1993]), we addressed whether defense costs should be allocated among several policy periods, as well as periods of self-insurance. After noting that the duty to defend is broader than the duty to indemnify, we held that “pro rata sharing of defense costs may be ordered, but we perceive no error or unfairness in declining to order such sharing, with the understanding that the insurer may later obtain contribution from other applicable policies”
 
 (id.
 
 at 655). We left open the issue whether indemnification should be prorated among the applicable policies.
 

 Con Edison maintains that pro rata allocation among the insurers would only be appropriate if the policies contained “other insurance” clauses providing for such allocation. This argument mistakes the function of “other insurance” clauses. Such clauses apply when two or more policies provide coverage during the same period, and they serve to prevent multiple recoveries from such policies
 
 (see Owens-Illinois, Inc. v United Ins. Co.,
 
 138 NJ 437, 470, 650 A2d 974, 991 [1994]; 6 Apple-man, Insurance Law and Practice § 3905). Here, by contrast, the issue was whether any coverage potentially existed at all among certain high-level policies that were in force during successive years. “Other insurance” clauses have nothing to do with this determination.
 

 Con Edison also suggests that the recent trend in other courts has been toward adopting the joint and several method. The authorities cited by Con Edison are, however, largely distinguishable, either because of different policy language or because of different choices by the insured regarding whether to self-insure
 
 (cf. e.g. Hercules, Inc. v AIU Ins. Co.,
 
 784 A2d 481, 493-494 [Del 2001]).
 

 
 *224
 
 Joint and several allocation in the present factual setting is inconsistent with the unambiguous language of the policies before us. Con Edison concedes that it is impossible to determine the extent of the property damage that is the result of an occurrence in a particular policy period. Indeed, its theory of the case was that while the plant was in operation — long before any of the policies were issued — there were leaks, spills and drips that eventually migrated to the groundwater. Con Edison planned to establish that the dispersion of the pollutants was a gradual, continuous process, thus creating an inference that there was an accident or occurrence during each and every policy period, though there is no evidence of an accident during any particular policy period.
 

 Con Edison wants to combine this uncertainty-based approach, which implicates many successive policies, with an entitlement to choose a particular policy for indemnity. Yet collecting all the indemnity from a particular policy presupposes ability to pin an accident to a particular policy period
 
 (see Sybron Transition Corp.,
 
 258 F3d at 601;
 
 Owens-Illinois,
 
 138 NJ at 465, 650 A2d at 988-989). Although more than one policy may be implicated by a gradual harm
 
 (see e.g. McGroarty v Great Am. Ins. Co.,
 
 36 NY2d 358, 365),
 
 *
 
 joint and several allocation is not consistent with the language of the policies providing indemnification for “all sums” of liability that resulted from an accident or occurrence
 
 “during the policy peri
 
 od”
 
 (see Olin Corp.,
 
 221 F3d 307, 323).
 

 Pro rata allocation under these facts, while not explicitly mandated by the policies, is consistent with the language of the policies. Most fundamentally, the policies provide indemnification for liability incurred as a result of an accident or occurrence during the policy period, not outside that period
 
 (see Forty-Eight Insulations,
 
 633 F2d at 1224). Con Edison’s singular focus on “all sums” would read this important qualification out of the policies. Proration of liability among the insurers acknowledges the fact that there is uncertainty as to what actually transpired during any particular policy period
 
 (see Sybron Transition Corp.,
 
 258 F3d at 602).
 

 We recognize — as did the trial court — that there are different ways to prorate liability among successive policies. Here, the court prorated liability based on the amount of time the policy was in effect in comparison to the overall duration of the damage. In
 
 Owens-Illinois,
 
 the New Jersey Supreme Court
 
 *225
 
 contemplated proration by multiplying the number of years the insurer provided coverage by the limits of the policies, and held that each insurer would be liable for that portion of the liability corresponding to the ratio of the total coverage provided by that insurer to the total coverage provided by all the policies in effect (138 NJ at 479, 650 A2d at 995). Other courts have prorated coverage based on the proportion of injuries suffered during relevant policy periods
 
 (see Uniroyal, Inc. v Home Ins. Co.,
 
 707 F Supp 1368 [ED NY 1988]). Courts also differ on how to treat self-insured retentions, periods of no insurance, periods where no insurance is available and settled policies under various allocation methods.
 

 Here, in determining whether certain upper-layer policies were justiciable, the trial court was presented with the “time-on-the-risk” method as an alternative to Con Edison’s “joint- and-several” approach. The court applied “time on the risk” and thus dismissed claims against policies that would not be reached under Con Edison’s highest estimate of damages. That was not error. We note, however, that this conclusion does not foreclose pro rata allocation among insurers by other methods either in determining justiciability or at the damages stage of a trial. Clearly this is not the last word on proration.
 

 Finally, Con Edison asserts that the trial court’s proration of damages deprived it of the benefits of valuable premium payments over many years. However, the proration ruling dismissed only certain high-level insurers — Con Edison did get to try its claims to a jury, albeit unsuccessfully, against three of the insurers who provided coverage for 34 years. And even applying pro rata allocation, had Con Edison succeeded in persuading the jury of the merits of its position, it might well have been entitled to recover under policies issued from 1936 to 1961, when the self-insured retention was $100,000. In the end, the result is dictated not by the pro rata allocation, but by Con Edison’s inability to convince the jury that the property damage was the result of an “accident” or “occurrence” as required by its insurance policies.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed, with costs.
 

 *
 

 The issue of how coverage is “triggered” is not before us.