■ ROMAN CATHOLIC DIOCESE OF BROOKLYN et al., Respondents, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant, et al., Defendant. [930 NYS2d 215]—

In November 2003, Jeanne M. N.-L., individually and as mother and natural guardian of Alexandra L., a minor under the age of 18 years, commenced an action against the plaintiffs herein and against Reverend James Smith, alleging that Smith sexually abused and otherwise assaulted Alexandra. The complaint, as amplified by the bill of particulars, alleged that the sexual abuse commenced "just after" Alexandra's tenth birthday which was on August 10, 1996, and continued until "in or about March to May 2002." The abuse allegedly occurred at different times during the day and week, and at multiple locations. The underlying action ultimately was settled for the sum of $2,000,000 plus "additional consideration."

The defendant National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter National), issued three annual commercial general liability (hereinafter CGL) policies to the plaintiffs for the period of August 31, 1995, through August 31, 1998. Nonparty Illinois National Insurance Company issued three annual CGL policies to the plaintiffs for the period of August 31, 1998, through August 31, 2001. Each of the six policies provided insurance with an "each occurrence limit" of $750,000, and included an endorsement which provided, in part, that the limits for each of the coverages provided by the policy would apply "excess of a $250,000," per occurrence, self-insured retention (hereinafter SIR). Between 1995-2002, the plaintiffs

also maintained umbrella coverage with the defendant Westchester Fire Insurance Company, pursuant to seven annual policies.

In January 2009 the plaintiffs commenced this action against National and Westchester seeking damages for breach of contract and a judgment declaring that National and Westchester were obligated to pay all costs and expenses incurred in connection with the defense and settlement of the underlying action. The plaintiffs sought coverage solely under the National CGL policies and the Westchester umbrella policies in effect between 1995-1996 and 1996-1997. In an order dated March 12, 2010, the Supreme Court, inter alia, denied those branches of National's motion which were for summary judgment, in effect, declaring that the alleged acts of sexual abuse in the underlying action constitute multiple occurrences, that the settlement amount and any "additional consideration" are to be allocated on a pro rata basis over seven policy periods, and that the plaintiffs must exhaust a $250,000 self-insured retention for each commercial general liability policy implicated, and granted those branches of the plaintiffs' cross motion which were for summary judgment dismissing National's fourth and sixth affirmative defenses. This appeal by National ensued.

"Where there is on-going and progressive injury that spans many years . . . the question 'is whether each [triggered] policy is liable for the entirety of [the liability for the injury] or whether each policy is responsible for paying only the portion of the [liability] somehow attributable to the amount of injury during the policy period' " (*Olin Corp. v Insurance Co. of N. Am.*, 221 F3d 307, 322 [2000], quoting *In re Prudential Lines Inc.*, 158 F3d 65, 84 [1998]).

Here, National established its prima facie entitlement to judgment as a matter of law declaring that the settlement amount and any "additional consideration" are to be allocated on a pro rata basis over seven policy periods. In determining a dispute over insurance coverage, courts must first look to the language of the policy (*see Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221 [2002]). The subject National CGL policies provide, in pertinent part, that: "This insurance applies to 'bodily injury' . . . only if . . . [t]he 'bodily injury' . . . is caused by an 'occurrence' " and "[t]he 'bodily injury' . . . occurs during the policy period." Significantly, the policies provide indemnification for liability as a result of bodily injury occurring during the policy period. Thus, "[p]ro rata allocation under these facts, while not explicitly mandated by the policies, is consistent with the language of the policies" (*id.* at 224).

In opposition, the plaintiffs failed to raise a triable issue of fact. The plaintiffs seek to allocate the settlement amount using the "joint and several" method, pursuant to which an insured may choose any one of the applicable policies it wishes, and demand payment for the entire claim under that single policy, up to the policy limit (*see Olin Corp. v Insurance Co. of N. Am.*, 221 F3d at 322; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d at 221-222). However, joint and several allocation is inconsistent with the unambiguous language of the National policies providing coverage for bodily injury that resulted from an occurrence "during the policy period" (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d at 224 [emphasis added]; cf. *Olin Corp. v Insurance Co. of N. Am.*, 221 F3d at 323-324). "[C]ollecting all the indemnity from a particular policy presupposes ability to pin an accident to a particular policy period" (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d at 224). Here, however, it cannot be determined to what extent the bodily injury allegedly sustained occurred during a particular policy period. Accordingly, the Supreme Court should have granted that branch of National's motion which was for summary judgment, in effect, declaring that the settlement amount and any "additional consideration" are to be allocated on a pro rata basis over seven policy periods (*see Crucible Materials Corp. v Certain Underwriters at Lloyd's London*, 681 F Supp 2d 216, 226 [2010]; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d at 216, 225; *Serio v Public Serv. Mut. Ins. Co.*, 304 AD2d 167, 172 [2003]).

National also established its prima facie entitlement to judgment as a matter of law declaring that the alleged acts of sexual abuse in the underlying action constitute multiple occurrences, and that the plaintiffs must exhaust a $250,000 self-insured retention for each of the two CGL policy implicated. "Occurrence" is defined in the National policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." This language does not reflect an intent by the parties to aggregate claims for the purpose of subjecting them to a single policy deductible or SIR (*see Appalachian Ins. Co. v General Elec. Co.*, 8 NY3d 162, 173 n 3 [2007]; *ExxonMobil Corp. v Certain Underwriters at Lloyd's, London*, 50 AD3d 434, 434-435 [2008]; *International Flavors & Fragrances, Inc. v Royal Ins. Co. of Am.*, 46 AD3d 224, 226 [2007]).

"In the absence of a specific aggregation-of-claims provision precisely identifying the operative incident or occasion giving rise to liability, the court must apply the 'unfortunate events'

test (*see Arthur A. Johnson Corp. v Indemnity Ins. Co. of N. Am.*, 7 NY2d 222 [1959]) to determine whether the underlying multiple claims constitute multiple 'occurrences' under the policy" (*ExxonMobil Corp. v Certain Underwriters at Lloyd's, London*, 50 AD3d at 435). In this regard, courts "must analyze the temporal and spatial relationships between the incidents and the extent to which they were part of an undisrupted continuum to determine whether they can . . . be viewed as a single unfortunate event—a single occurrence" (*Appalachian Ins. Co. v General Elec. Co.*, 8 NY3d at 174).

Here, the sexual abuse allegedly occurred over a seven-year period, at different times, and at multiple locations. Thus, it cannot be said that there was a close temporal and spatial relationship between the acts of sexual abuse (*id.*). Under the circumstances, National demonstrated, prima facie, that the alleged acts of sexual abuse constituted multiple occurrences (*see Interstate Fire & Cas. Co. v Archdiocese of Portland in Oregon*, 35 F3d 1325, 1331 [1994]; *Society of R.C. Church of Diocese of Lafayette & Lake Charles, Inc. v Interstate Fire & Cas. Co.*, 26 F3d 1359, 1365 [1994]; *Safeguard Ins. Co. v Angel Guardian Home*, 946 F Supp 221, 231 [1996]; *Roman Catholic Diocese of Joliet, Inc. v Interstate Fire Ins. Co. [State Report Title: Roman Catholic Diocese v Lee]*, 292 Ill App 3d 447, 456, 685 NE2d 932 [1997]). Moreover, where, as here, "multiple policies are triggered and liability is allocated to each, each policy's deductible is applicable" (*Olin Corp. v Insurance Co. of N. Am.*, 221 F3d at 328). In opposition to National's prima facie showing, the plaintiffs failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted those branches of National's motion which were for summary judgment, in effect, declaring that the alleged acts of sexual abuse in the underlying action constitute multiple occurrences, and that the plaintiffs must exhaust a $250,000 self-insured retention for each of the two CGL policy implicated.

Turning to the plaintiffs' cross motion, the plaintiffs failed to establish their prima facie entitlement to judgment as a matter of law dismissing National's fourth affirmative defense on the ground that National waived that defense pursuant to Insurance Law § 3420 (d). National's fourth affirmative defense alleged that "[t]o the extent coverage exists for plaintiffs' claim, it is subject to multiple [SIRs] under the Policies." The SIRs, which are contained in endorsements, do not implicate exclusions in the policies. Therefore, "the time requirements for disclaiming coverage under Insurance Law § 3420 (d) are inapplicable" (*Power Auth. of State of N.Y. v National Union Fire*

*Ins. Co. of Pittsburgh*, 306 AD2d 139, 140 [2003]; *see Pav-Lak Indus., Inc. v Arch Ins. Co.*, 56 AD3d 287, 288 [2008]). Accordingly, the Supreme Court should have denied that branch of the plaintiffs' cross motion which was for summary judgment dismissing National's fourth affirmative defense.

Finally, the plaintiffs failed to establish their prima facie entitlement to judgment as a matter of law dismissing National's sixth affirmative defense. Thus, the Supreme Court should have denied that branch of the plaintiffs' cross motion, regardless of the sufficiency of the opposition papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Since this is, in part, an action for a declaratory judgment, we remit the matter to the Supreme Court, Kings County, for the entry of a judgment, inter alia, declaring that the alleged acts of sexual abuse in the underlying action constitute multiple occurrences, that the settlement amount and any "additional consideration" are to be allocated on a pro rata basis over seven policy periods, and that the plaintiffs must exhaust a $250,000 self-insured retention for each CGL policy implicated (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]). Mastro, J.P., Dickerson, Chambers and Roman, JJ., concur.