■ Jacobson Family Investments, Inc., et al., Plaintiffs, and MDG 1994 Grat, LLC, Respondent, v National Union

Fire Insurance Company of Pittsburgh, PA, Appellant, et al., Defendants. [12 NYS3d 41]—

Judgment, Supreme Court, New York County (Marcy S. Friedman, J.), entered October 8, 2014, after a nonjury trial, awarding plaintiff MDG 1994 Grat, LLC, damages as against defendant National Union Fire Insurance Company of Pittsburgh, PA, unanimously reversed, on the law, without costs, and it is declared that Rider 14 of the financial institution bond issued by defendant does not provide for coverage for plaintiff's loss and alternatively that Exclusion x of the financial institution bond issued by defendant excludes coverage for plaintiff's loss. The Clerk is directed to enter judgment accordingly.

Former plaintiff Jacobson Family Investments, Inc. (JFI) manages the assets of various limited liability companies, including MDG 1994 Grat, LLC (MDG), the sole remaining plaintiff in this action.* In 2007, JFI submitted an application for, and purchased, a Financial Institution Bond from defendant National Union Fire Insurance Company of Pittsburgh, PA. In 2008, JFI filed a claim with National Union for alleged losses it sustained as a result of the dishonest acts of Bernard L. Madoff. Madoff was arrested in December 2008 for running a Ponzi scheme. He subsequently pleaded guilty to various charges involving securities fraud and is currently incarcerated.

At trial, the coverage dispute had distilled down to two issues, the first being whether the losses claimed were covered losses under Rider 14 of the bond and, second, if they were, whether the claim was nonetheless barred by the exclusion contained in paragraph 2 (x) of the bond (Exclusion x).

Rider 14 provides that the bond will cover: "Loss resulting directly from the dishonest acts of any Outside Investment Advisor, named in the Schedule below, solely for their duties as an Outside Investment Advisor, on behalf of the Insured, committed alone or in collusion with others . . . provided, however, the Insured shall first establish that the loss was directly caused by dishonest acts of any Outside Investment Advisor which results in improper personal financial gain to such Outside Investment Advisor and which acts were committed with the intent to cause the Insured to sustain such loss."

---

* This is the result of certain prior decisions and orders, including our prior order of December 11, 2012 (102 AD3d 223 [1st Dept 2012], *affg* 2011 NY Slip Op 33628[U] [Sup Ct, NY County 2011, Lowe, J.]).

Madoff is among the individuals and companies identified in the schedule to Rider 14 as being an Outside Investment Advisor. In its application for the bond, JFI represented that Madoff managed an estimated $123,506,945 in assets for it.

Exclusion x of the bond provides: "This bond does not cover: . . . loss resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who is a securities, commodities, money, mortgage, real estate, loan, insurance, property management, investment banking broker, agent or other representative of the same general character."

Following a nonjury trial, the trial court determined that MDG had met its prima facie burden of proving it had suffered a loss within the meaning of the policy, that such loss was caused by Madoff's fraudulent acts and that as Madoff was a named Outside Investment Advisor, such loss came within the ambit of the coverage in Rider 14. The trial court rejected National Union's argument, that MDG had not met its burden of proving the alleged losses were committed by Madoff acting "solely" in his capacity as an Outside Investment Advisor, but were of a hybrid nature, and therefore outside the coverage of Rider 14. The trial court reasoned that such an interpretation would render Rider 14 meaningless because Madoff, although expressly listed as an investment advisor in the related bond schedule, was both a registered securities broker and investment advisor, and could never satisfy the claimed coverage condition. The trial court's decision hinged on its contractual interpretation of Rider 14. The trial court went on to conclude that National Union had not proven that the losses otherwise fell within Exclusion x because it did not prove that they were caused by Madoff acting as a securities broker.

We now reverse. We find that there was indisputable evidence at trial that Madoff, in perpetrating his Ponzi scheme, was acting in a hybrid capacity as both an investment advisor and a securities broker. Consequently, the bond requirement that the loss be attributable to the defrauder acting solely in his or her investment advisory capacity was not satisfied.

Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy defeats coverage (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 218 [2002]). Consequently, it is MDG's burden to establish that the losses fall within Rider 14, and if they do then the burden shifts to National Union to establish that the losses are otherwise excluded under Exclusion x. We agree with the trial court, that Rider 14, in itself, is not ambiguous (*see Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 354-355

[1978]). Consequently, the parties' rights and obligations under the rider to the policy must be based on the specific language contained therein (*see TAG 380, LLC v ComMet 380, Inc.*, 10 NY3d 507, 513 [2008]).

Applying these well established legal principles, we find that Rider 14 limits coverage to losses where the identified Outside Investment Advisor acts "solely" in that capacity. Any other interpretation would completely negate and render superfluous the significant term "solely" contained in Rider 14. MDG's interpretation of Rider 14, that losses caused by any person or entity identified in the schedule as an Outside Investment Advisor are covered, regardless of the capacity in which such person or entity is acting when incurred, impermissibly broadens the scope of coverage. Rider 14 does not provide loss coverage for "any" dishonest act undertaken by an individual named as an Outside Investment Advisor and the parties' agreement may not be altered to obtain a different result (*see White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007]). Nor does restricting coverage to situations where the loss results directly from the dishonest act of an outside investment advisor "solely for their duties as an Outside Investment Advisor" effect a blanket preclusion of coverage for any act by Madoff simply because he happened to be both a registered securities broker and investment advisor. In evaluating what capacity someone otherwise identified as an Outside Investment Advisor acted, a close examination of the actions actually undertaken that created the loss is necessary.

The only issue is whether MDG met its burden of proving that it incurred losses arising from Madoff acting "solely" in his capacity as an Outside Investment Advisor. The overwhelming and largely undisputed evidence adduced at trial is that MDG's losses were due to Madoff acting not only as an investment advisor, but also as a securities broker. In perpetrating the Ponzi scheme resulting in MDG's losses, Madoff not only provided fraudulent investment advice, he also serviced a securities brokerage account that MDG created in 2006 with Bernard L. Madoff Investment Services, LLC (BLMIS), an entity wholly owned by Madoff. In creating the accounts, certain agreements were signed, including a Customer Agreement and a Trading Authorization. The Customer Agreement, in particular, expressly refers to the creation of a broker/customer relationship between BLMIS and MDG. In connection with the creation of the brokerage accounts, MDG also designated Madoff, individually, to act as its agent for purchases, sales or trades of securities on its behalf. MDG sup-

plied investment funds which were deposited into a Chase Manhattan bank account titled solely in Madoff's name. Although the funds provided were supposed to be used by Madoff to execute the purchases, sales or trades authorized under the brokerage agreement, they never were. Instead, Madoff, acting through BLMIS, provided MDG with false brokerage account statements purporting to show deposits and withdrawals in MDG's brokerage account, various false purchases and sales of stocks and other securities as well as nonexistent interest, dividends and requested withdrawals from its brokerage account, which money actually came from later deposits into the Chase account. Compensation was paid to Madoff and BLMIS in the form of commissions on the falsely reported trades. After criminal charges were brought against Madoff, MDG filed a customer claim for compensation with BLMIS's trustee pursuant to the Securities Investor Protection Act (SIPA), asserting that its funds were stolen by BLMIS, as securities broker. MDG was awarded $500,000 which it then assigned to the SIPA trustee to satisfy "claw back claims" asserted against MDG by other affiliated JFI investors.

Given these facts, there is simply no way to separate Madoff's activities as an investment advisor from his activities as a securities broker insofar as they produced the losses claimed. The duality of the services Madoff provided places MDG's claims outside Rider 14 and National Union has no duty to cover the loss asserted because the extended coverage in Rider 14 is "solely for their [a named Outside Investment Advisor] duties as an Outside Investment Advisor" (see Columbia Equities v Underwriters at Lloyd's, London, 186 AD2d 486, 486 [1st Dept 1992]).

Alternatively, even if there were coverage under Rider 14, we hold that Exclusion x, which excludes coverage for "loss resulting directly or indirectly from any dishonest or fraudulent act or acts committed by any non-Employee who is a securities . . . broker," would otherwise exclude coverage under the facts of this case. Exclusion clauses by their nature subtract from rather than grant coverage (Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 5 NY3d 157, 163 [2005]). Exclusion x does not provide that the nonemployee must have actually been "acting as" a securities broker at the time of the loss, it only requires that the nonemployee "is" a securities broker. It is undisputed that Bernard Madoff was not plaintiff's "Employee" (as that term is defined in the bond) and that he was a registered broker-dealer during the entire period he dealt with plaintiff. Concur—Sweeny, J.P., Renwick, Andrias, DeGrasse and Gische, JJ.