Century Indem. Co. v Brooklyn Union Gas Co. (2025 NY Slip Op 03379)

Century Indem. Co. v Brooklyn Union Gas Co.

2025 NY Slip Op 03379

Decided on June 05, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 05, 2025

Before: Manzanet-Daniels, J.P., Kapnick, Shulman, Higgitt, Michael, JJ. 

Index No. 603405/01 403087/02|Appeal No. 3551-3552|Case No. 2024-00848 2024-00850|

[*1]Century Indemnity Company, Plaintiff-Appellant-Respondent,
v
Brooklyn Union Gas Company, Defendant-Respondent-Appellant, American Reinsurance Co, et al., Defendants.
Brooklyn Union Gas Company, Plaintiff-Respondent-Appellant,
v
Century Indemnity Company, Defendant-Appellant-Respondent, Munich Reinsurance America Inc., Defendant.

O'Melveny & Myers LLP, New York (Anton Metlitsky of counsel), for appellant-respondent.
Covington & Burling LLP, Washington, DC (Mark W. Mosier of the bar of the District of Columbia, admitted pro hac vice, of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Gerald Lebovits, J.), entered on or about January 8, 2024, which denied plaintiff insurer's motion to set aside and modify a jury verdict and for a new trial on certain issues and defendant's motion to modify the verdict, unanimously modified, on the law, to remand for a new trial on notice and duty to investigate, and otherwise affirmed, without costs.
This almost 25-year-old litigation currently focuses on three manufacturing gas plants (MGPs) defendant formerly owned and operated at the Fulton (1880-1928), Citizens (1860-1963) and Metropolitan (1872-1928) sites (collectively, the three sites) in Brooklyn, all of which bordered the Gowanus Canal. It is essentially undisputed that when processing gas, these MGPs environmentally contaminated the canal and the subsoil at the three sites. Unsurprisingly, in the early to mid-2000s, defendant received a series of orders from both the New York State Department of Environmental Protection and the U.S. Environmental Protection Agency requiring it to investigate and remediate the pollution in the canal and at the three sites.
Plaintiff was the excess liability insurer that issued six policies to defendant during the period 1941-1969 to cover liability for third-party property damage. Each of these policies was for a one-year term, contained a self-insured retention of $100,000, and was renewed yearly. Four of the policies contained a provision requiring defendant to give plaintiff notice "[u]pon the happening of an occurrence or accident that appears reasonably likely to involve liability on the part of [defendant] . . ." (objective standard). The other two policies required notice to plaintiff "upon [defendant] learning of any occurrence which in its judgment is likely to result in a claim in excess of the retained limit . . ." (subjective standard).
In January 1993, New York City issued a notice to defendant of its intent to sue based on coal tar waste contamination at the Coney Island MPG site, not at issue here, unless it started immediate clean-up operations. Just one month later, defendant sent plaintiff notices of occurrence for the three sites. Between 2002 and 2005, defendant received remediation orders for the three sites and the costs were expected to be far in excess of the $100,000 self-insured retention thresholds.
In this 2001 action, plaintiff sought a declaration that it lawfully disclaimed excess coverage for contamination remediation and related costs based on defendant's untimely notice of an occurrence. Defendant countersued to compel coverage. At different stages of this protracted litigation, plaintiff made multiple motions for summary judgment and partial summary judgment resulting in two successive appeals. This Court's decisions resolving those appeals are relevant here. In 2009, we affirmed the denial of plaintiff's motion for summary judgment on its claim of untimely notice (see Century Indem. Co. v Keyspan Corp., 15 Misc 3d 1132[[*2]A], 2007 NY Slip Op 50957[U] [Sup Ct, NY County 2007], affd sub nom. Century Indem. Co. v Brooklyn Union Gas Co., 58 AD3d 573 [1st Dept 2009]). Among the material issues of fact was whether defendant considered pro rata allocation of damages, among other information known to plaintiff, in its notice analysis as to whether the costs of remediating the hazardous waste contamination at the three sites was reasonably likely to implicate excess coverage prior to February 1993, if at all (id. at *10).
Ten years later and relevant to the damages issues raised in this posttrial appeal, we affirmed the motion court's holding that plaintiff's successive policies were subject to a pro rata allocation for all losses resulting from long term, continuous contamination that spanned the successive policy periods (see Century Indem. Co. v Brooklyn Union Gas Co., 170 AD3d 632, 633 [1st Dept 2019], citing Consolidated Edison Co. of New York v Allstate Ins. Co., 98 NY2d 208, 223 [2002]). However, we modified to deny plaintiff summary judgment, finding the policies ambiguous as to whether the per-occurrence limits in multi-year policies or multi-year renewals were for the entire terms of these policies, or were annual per-occurrence limits (see Century Indem. Co., 170 AD3d at 633).
In 2022, the matter proceeded to trial and the jury returned a verdict for defendant, finding that there was excess coverage for the three sites in differing amounts and that plaintiff's defenses, including untimely notice, lacked merit.
In this appeal, plaintiff challenges a number of pretrial and trial rulings. In essence, Plaintiff argues that no controlling precedent permitted an instruction that the jury must simply perform a pro rata allocation calculation of the potential clean-up costs (damages) and retention amounts over the three sites' extensive periods of contamination. This allowed the jury to wrongly conclude the attachment point under each policy was not reached in February 1993 even if that sum exceeded the $100,000 self-insured retention threshold. Thus, according to plaintiff, these calculations led the jury to wrongly determine that defendant's notices of occurrences were timely sent. Further, plaintiff contends it was improperly precluded from presenting two critical pieces of evidence: (1) evidence that there was no reasonable possibility that defendant considered pro rata allocation in its notice calculus either to allegedly justify its timely notice or excuse its late notice; and (2) the evidence which put defendant on inquiry notice and triggered an affirmative duty to investigate.
In its cross-appeal, defendant challenges the court's finding as a matter of law that the per-occurrence limits for multi-year policies and multi-year renewals were for the entire period and did not reset annually.
The trial court erred when it instructed the jury to deem pro rata allocation of damages and retention amounts a reasonably likely factor comprising defendant's notice [*3]analysis, even without evidence of that allocation, when deciding whether defendant provided a timely notice of occurrence (see Long Is. Light. Co. v Allianz Underwriters Ins. Co., 24 AD3d 172, 173 [1st Dept 2005], lv dismissed 6 NY3d 844 [2006]). Rather, the jury should have been left to consider all factors relevant to when the original retention amounts were reasonably likely to be exceeded implicating the excess policies (see Century Indem. Co., 58 AD3d at 574). This should include motive and other evidence that the trial court erroneously excluded regarding the timely notice issue.
Further, the trial court should have left it for the jury to decide whether defendant was on inquiry notice of an occurrence, and if so, whether it properly investigated the occurrences (see Green Door Realty Corp. v TIG Ins. Co., 329 F3d 282, 287 [2d Cir 2003]).
We reject plaintiff's argument that the trial court should not have apportioned the coverage for cleanup costs of the Gowanus Canal equally among the three sites. Regulators would apportion costs of the Gowanus Canal cleanup equally among the three sites, thus providing a rational basis for the court's apportionment of those costs.
The trial court properly refused to apply the doctrine of contra proferentem to resolve ambiguities in the policy as to whether per-occurrence limits in multi-year policies and multi-year renewals applied on an annual basis. Defendant, which has a large in-house insurance department, processes dozens of claims in house monthly, self-insures for large amounts, and has numerous lawyers and brokers, is sophisticated in insurance coverage matters and thus has sufficient knowledge and bargaining power to craft an agreement to its benefit (see Cummins, Inc. v Atlantic Mut. Ins. Co., 56 AD3d 288, 290 [1st Dept 2008]). Given our determination, plaintiff's objection to the exclusion of certain expert testimony is academic.
We have considered the parties' remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 5, 2025