OPINION OF THE COURT
Saliann Scarpulla, J.
In this insurance coverage action, plaintiff Keyspan Gas East Corporation (Keyspan) seeks, inter alia, a declaration that defendant Century Indemnity Company (Century) is obligated to indemnify it for costs of environmental cleanup at two former manufactured gas plant sites located in Hempstead and Rock-away Park. Between 1953 and 1969, Century issued eight excess liability insurance policies to Keyspan’s predecessor-in-interest, Long Island Lighting Company, which are the insurance polices at issue on this motion.[1]
Century now moves for partial summary judgment seeking a declaration that: (1) Century is not responsible for any portion of the property damage at the Hempstead and Rockaway Park sites that occurred outside the policy periods; and (2) any *397 covered costs are to be allocated pro rata over the entire period during which property damage at each site occurred, which Century asserts is 1905 to 2001 for the Hempstead site and 1882 to 2012 for the Rockaway Park site.
Century contends that a pro rata time on the risk allocation should apply because neither party can produce evidence as to how much property damage occurred within a given policy period. Century argues that, under this method, the total cost for each site should be allocated over the entire period during which property damage occurred, and Century should then only be liable for the pro rata share for the years that its policies were in effect, 1953 to 1969.
In support of its argument that property damage occurred at the Hempstead site between 1905 to 2001, and at the Rockaway Park site between 1882 to 2012, Century submits a report from its expert Charles Anderson, in which he states that soil contamination began within two years of the start of operations at Hempstead and Rockaway Park. As operations began at Hempstead in 1903 and at Rockaway Park in 1880, Century claims that property damage began to occur in 1905 and 1882, respectively.
Century asserts that property damage was ongoing at Hemp-stead until 2001, based on Keyspan’s expert report from Dr. Robert Powell, in which he stated that the groundwater plumes at Hempstead became stable in 2002. As to the Rockaway Park site, Century claims that property damage was ongoing until 2012, based on Dr. Powell’s opinion that tar migration would continue into Jamaica Bay until remedial barrier walls were built, which had not yet occurred in 2012.
Lastly, Century argues that the court should not truncate the allocation period to the years when insurance was available in the marketplace because it would then be responsible for indemnifying Keyspan for damage that occurred outside the policy periods. Century claims that, in a previous ruling, this court already declined to truncate the allocation period, and that any truncated allocation period would frustrate the legislature’s intent in enacting former Insurance Law § 46 in 1971, which prohibited the issuance of pollution insurance between 1971 and 1986.[2]
In opposition, Keyspan argues that the court should allocate costs to the periods of time when insurance for environmental *398 risks was available in the marketplace. Keyspan argues that the New York state courts have adopted the “availability of insurance” allocation method set forth in Stonewall Ins. Co. v Asbestos Claims Mgt. Corp. (73 F3d 1178, 1202 [2d Cir 1995]), and that this allocation method is consistent with the New York Court of Appeals decision in Consolidated Edison Co. of N.Y. v Allstate Ins. Co. (98 NY2d 208 [2002]) (Con Edison).
Keyspan further argues that, as the insurer, Century bears the burden of demonstrating when environmental insurance was available in the marketplace, and a disputed issue of fact exists as to when such insurance was available. Finally, Key-span argues that Century’s motion should be denied because an issue of fact exists as to when property damage occurred at each site. Keyspan emphasizes that the insurance policies cover third-party property damage only, and thus, an issue of fact exists as to when third-party property damage occurred.
Discussion
Where an injury such as environmental damage occurs over a number of years and triggers multiple sequential insurers and policies, courts have determined damages based upon pro rata allocation. “Because in these types of cases it is virtually impossible to allocate to each policy the liability for injuries occurring only within its policy period, the courts are left with the nettlesome problem of how to allocate damages among the policies.” (15 Steven Plitt et al., Couch on Insurance 3d § 220:25 [2014].)
A pro rata “time on the risk” allocation requires costs to be allocated according to the number of years that the insurer was on the risk “by multiplying the total loss by a fraction that has as its denominator the entire number of years of the claimant’s *399 injury, and as its numerator the number of years within that period when the policy was in effect.” (Certain Underwriters at Lloyd’s, London v Foster Wheeler Corp., 36 AD3d 17, 20-21 [1st Dept 2006] [internal quotation marks and brackets omitted], quoting Stonewall, 73 F3d at 1202.) “Proration of liability among the insurers acknowledges the fact that there is uncertainty as to what actually transpired during any particular policy period.” (Con Edison, 98 NY2d at 224.)
For years where an insured has no insurance coverage, the insured generally bears its own pro rata share of the loss. (15 Steven Plitt et al., Couch on Insurance 3d § 220:31 [2014].) Proration to the insured is appropriate for the years where the insured “elected not to purchase insurance or purchased insufficient insurance.” (Stonewall, 73 F3d at 1203.) For those years, the insured is treated as self-insured and bears responsibility for its pro rata share of damages.
Proration to the insured is inappropriate, however, for those years where insurance was unavailable in the marketplace. (Id.; Nomet Mgt. Corp. v Virginia Surety Co., Inc., 2012 NY Slip Op 33697[U], *8 [Sup Ct, NY County 2012] [“In determining allocation, the court must also inquire whether during periods of no insurance, there was appropriate insurance available in the marketplace”].)
Century argues that a pro rata allocation over the period where insurance is available will require it to indemnify Key-span for property damage outside the policy periods. Pro rata allocation, however, is not intended to hold an insurer liable for damages not within the coverage of the policies, but instead to allocate damages to insurance policies based on the “time on the risk and the degree of risk assumed.” (Stonewall, 73 F3d at 1203.) For those periods of time where no insurance was purchased, courts prorate liability to the insured as if it has assumed the risk “either by declining to purchase available insurance or by purchasing ... an insufficient amount of insurance” which is determined by an objective test of whether insurance was available in the marketplace. (Id. at 1204; Olin Corp. v Insurance Co. of N. Am., 221 F3d 307, 325 [2d Cir 2000].)
Further, Century’s argument that it is only liable under the policies for property damage that occurs within the policy periods is misplaced. Six of the insurance policies require Century to indemnify Keyspan for any damages that result from an occurrence that happens within the policy period, even if those damages occur outside the policy period. (Stonewall, 73 *400 F3d at 1203 [noting that “insurers’ reliance on language limiting their coverage to injury ‘which occurs during the policy period’ ignores their obligation to indemnify for subsequent damages attributable to an injury occurring during the relevant policy”].)[3] Where policy language requires an insurer to indemnify the insured for damages resulting from an occurrence happening within the policy period, the insurer may be held liable up to the limits of its policies. (Olin Corp. v American Home Assur. Co., 704 F3d 89, 101 [2d Cir 2012].)
Finally, a pro rata allocation that considers the availability of insurance is consistent with the language of the policies, and the New York Court of Appeals decision in Con Edison. In Con Edison, the Court of Appeals affirmed the trial court’s use of pro rata “time on the risk” allocation, but recognized that courts may differ as to how it treats “periods of no insurance, [and] periods where no insurance is available.” (98 NY2d at 225; Certain Underwriters, 36 AD3d at 21 n 1.)
Here, it is undisputed that the parties cannot parse out the exact amount of property damage which occurred within each policy period. Thus, it is impossible to determine whether all, some, or none of the damage occurred during the period when the sites at issue -were insured by Century. In such circumstances, where property damage is indivisible, pro rata allocation is the rational, equitable method to determine how to allocate damages among multiple triggered insurance policies. I therefore grant Century’s motion for partial summary judgment only to the extent that I will apply a pro rata time on the risk allocation to determine Century’s indemnification obligations with respect to the Hempstead and Rockaway Park sites, as set forth in more detail below.
Calculating the Pro Rata Time on the Risk Allocation
There is no dispute as to the number of years over which Century insured the Rockaway Park and Hempstead sites (the numerator of the time on the risk pro rata allocation). There are, however, issues of fact as to certain dates required to calculate the denominator of the pro rata time on the risk allocation equation. First, the parties dispute the time period over which property damage occurred at Hempstead and Rockaway Park. Although Century submitted evidence to show when prop *401 erty damage occurred at each site, its evidence was insufficient to prove the time period over which property damage occurred as a matter of law.
The parties also dispute when insurance coverage was available. Keyspan submitted an affidavit from Century’s expert, James Robertson, who opined that property damage liability insurance was readily available after 1925. According to Century, Keyspan has produced an expert report on the availability of insurance, but that report was not submitted on this motion.
In any event, I find that the period between 1971 and 1982 must be included in the denominator of the pro rata time on the risk allocation for the Hempstead and Rockaway Park sites, even though no insurance coverage was available to Keyspan and its predecessors during that time period. During that period of time, a “pollution exclusion was required in all liability policies.” (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 652 [1993].)
In 1971, the legislature amended Insurance Law § 46 to provide that property damage liability insurance policies “expressly exclude . . . liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.” (Insurance Law § 46 [14], amended by L 1982, ch 856, § 1 [exclusion deleted], repealed by L 1984, ch 367, § 1.) The purpose of this statute was “to prohibit commercial or industrial enterprises from buying insurance to protect themselves against liabilities arising out of their pollution of the environment” which would help “assure that corporate polluters bear the full burden of their own actions spoiling the environment, and would preclude any insurance company from undermining public policy by offering this type of insurance protection.” (Governor’s Mem, 1971 NY Legis Ann at 353-354.)
Given the legislature’s clear intent that companies such as Keyspan bear the full burden of their own actions affecting the environment, I decline to exclude the period between 1971 and 1982 from the allocation period when pollution insurance was prohibited.[4]
*402 Conclusion
For the reasons set forth above, I find that the proper allocation formula for determining potential damages requires the total costs for each site to be multiplied by “a fraction that has as its denominator the number of years in which both injury-in-fact [property damage] was occurring and insurance was available, and as its numerator the number of years within that period when the insurance was in effect.” (Stonewall, 73 F3d at 1204.) For those periods where Keyspan did not purchase insurance when it was available in the marketplace, Keyspan will be allocated its pro rata share accordingly. In addition, the period allocated to Keyspan will include the years between 1971 and 1982, and Keyspan shall be considered self-insured and bear responsibility for the pro rata share of costs for that period.
At trial, Century, as insurer, bears the burden of proving that insurance was generally available in the marketplace, and Key-span, as insured, bears the burden of proving that insurance was not reasonably available to it. (Uniroyal Inc. v American Re-Insurance Co., 2005 WL 4934215, 2005 NJ Super Unpub LEXIS 794 [App Div, Sept. 13, 2005].) The relevant inquiry is not “limited to whether an insured was able to continue obtaining coverage for the particular risk in the same policy type” but may take into account whether the insured could purchase coverage of another policy type that would have provided similar coverage. (Olin Corp., 221 F3d at 326.)
After the above issues of fact are resolved, any costs as to the Hempstead and Rockaway Park sites shall be allocated in a manner consistent with this decision.
In accordance with the foregoing, it is ordered that defendant Century Indemnity Company’s motion for partial summary judgment on the issue of allocation for the Hempstead and Rock-away Park sites is granted only to the extent that any costs are to be allocated pro rata over the entire period during which property damage occurred at each site, with exclusions for the period of time when insurance was unavailable prior to the policy periods 1953 to 1969, and for the period of time when insurance was unavailable after 1986, with no exclusion for the period between 1971 and 1982; and it is further ordered that a final judgment consistent with this opinion shall be entered after trial in this action.

. The eight excess liability insurance policies bear policy numbers XCP-1200, XBC-1097, XBC-40530, XBC-41176, SRL-2220, XCP-1086, XCP-3001, and XCP-3860. Familiarity with the language of the policies is assumed.

. Although Century is the only remaining defendant in this action, the complaint originally asserted indemnification claims against other insurers *398 under separate insurance policies. In or around 2003, defendant Lexington Insurance Company (Lexington) and several other insurers moved for summary judgment dismissing the complaint, on the grounds that its insurance policies would never be reached because they attached at limits that exceeded any potential damages.
On December 24, 2003, Justice Ira Gammerman granted Lexington’s motion for summary judgment dismissing the complaint. In assessing whether any potential damages would reach Lexington’s policies, Judge Gammerman used a pro rata time on the risk allocation by taking the highest cost scenario at the most expensive site—Hempstead at $60,554,000—and allocating the total cost over the time period 1953 to 1986, which resulted in a pro rata allocation of $1,832,667 per year. Finding that Lexington’s policies would never be triggered because their attachment point exceeded the maximum potential damage per year, $1,832,667, Judge Gammerman dismissed the complaint against Lexington and other insurers who had policies attaching at higher limits.

. Of the eight policies, only two require property damage to occur within the policy period (XBC-41176 and SRL-2220). The remaining policies require that an occurrence happen within the policy period, and that Century must indemnify any damages arising out of the occurrence.

. Contrary to Keyspan’s claims, Judge Gammerman previously ruled on December 24, 2003 that the allocation period must include the period between *402 1971 and 1982 based on the legislature’s intent to prohibit companies from purchasing pollution coverage during those years.