[37 NYS3d 85]

Keyspan Gas East Corporation, Respondent, v Munich Reinsurance America, Inc., et al., Defendants, and Century Indemnity Company, Appellant.

First Department, September 1, 2016

## APPEARANCES OF COUNSEL

*O'Melveny & Myers LLP*, Washington, D.C. (*Jonathan D. Hacker* of the District of Columbia bar and the Maryland bar, admitted pro hac vice, and *Anton Metlitsky* of counsel), and *Boutin & Boutin, P.L.L.C.*, Carmel (*John L. Altieri* of counsel), for appellant.

*Covington & Burling LLP*, New York City (*Jay Smith* and *Mark Gimbel* of counsel), for respondent.

## OPINION OF THE COURT

Gische, J.

This is an insurance coverage dispute involving long-term, gradual environmental property damage caused by pollution from manufactured gas plants (MGPs) owned by plaintiff and/or its predecessors (collectively Keyspan). Hazardous waste from the MGPs leached into groundwater over a protracted period of time. The New York Department of Environmental Conservation (NYDEC) made claims against Keyspan, requiring it to assume the costs of investigation and cleanup of the environmental contamination. Keyspan, in turn, filed claims with its insurer, defendant Century Indemnity Company (Century), under certain general liability policies in effect during a 16-year period in which the pollution was occurring. There is no dispute that the harm caused by the pollution was

indivisible and continuous over a long period of time that greatly exceeded the 16-year period during which Century had issued insurance policies.

We are called upon to decide an issue of first impression in New York State appellate courts, concerning the proper allocation, under the Century insurance policies, of risk of loss attributable to a continuous harm occurring, in part, during periods when liability insurance was unavailable in the marketplace. Keyspan contends, and the motion court agreed, that the pro rata allocation analysis set forth by the Court of Appeals in *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.* (98 NY2d 208 [2002]) should be refined to require that the insurer assume the allocated risk for losses occurring during periods when liability insurance was unavailable in the marketplace. Century argues that under a pro rata allocation of risk, Keyspan, the insured, should be held accountable for losses attributable to periods of time when it could not, and consequently did not, purchase insurance. Although we believe that, in accordance with the Court of Appeals' decision in *Con Edison*, the insurance policies in this case warrant a pro rata allocation of risk, *Con Edison* left unanswered the specific question posed on this appeal.[1] For the reasons set forth below, we answer the question by holding that under the insurance policies at issue, Century does not have to indemnify Keyspan for losses that are attributable to time periods when liability insurance was otherwise unavailable in the marketplace.

Keyspan has operated two MGPs,[2] located respectively in Rockaway Park, Queens, and Hempstead, Long Island, since the early twentieth century. These (and other) MGP sites are contaminated with numerous hazardous wastes (predominantly tar) that have leached into the surrounding groundwater and soil. Although exactly when contamination of these sites began is disputed, and the amount of environmental damage that occurred in any given year cannot be precisely ascertained, it is clear that the contamination was continuous and gradual, oc-

---

**1.** In *Con Edison* (98 NY2d at 225), the Court of Appeals stated "Courts also differ on how to treat self-insured retentions, periods of no insurance, *periods where no insurance is available* and settled policies under various allocation methods" (emphasis added). Although the Court recognized different treatments of this issue, it did not resolve those differences.

**2.** There are four other sites that are the subject of this action, as well as other defendants. Only two of the MGPs and only the Century policies are at issue in this appeal. Century represents the first "layer" of excess insurance coverage.

curring over a period of many decades. Century claims that contamination of the Hempstead site took place between 1903 and 2001, whereas contamination of the Rockaway site began in 1905 and possibly continued until 2012.[3] The contamination was caused by Keyspan's operation and maintenance of the MGPs.

In 1995, NYDEC sought to hold Keyspan strictly liable for the resulting pollution, requiring it to pay for the investigation and cleanup of these sites (*see* Environmental Conservation Law § 1-0101 *et seq.*). Keyspan's remediation costs ran in the millions of dollars. Keyspan now seeks to have Century indemnify it for these costs based upon 16 successive years of general liability insurance policies issued by Century from 1953 to 1969.[4] The various claims in this action implicate multiple successive insurance policies, as well as periods of no insurance. Insofar as is relevant to this appeal, Keyspan's claim for indemnification by Century includes not only the 16-year period that the policies were in effect, but also periods of time, both before 1953 and after 1969, when insurance covering this risk could not be purchased in the marketplace.[5] Conversely, Century denies that it must indemnify Keyspan for any damages that did not occur "during the policy period," contending that any property damage that occurred outside that 16-year period and during periods of no insurance is the sole responsibility of Keyspan, whether or not other insurance coverage was available in the marketplace. In concrete terms, the parties' dispute implicates responsibility for as many as 70 years' worth of allocated risk.

Keyspan brought this action for a declaratory judgment seeking indemnification for the costs of the environmental cleanup compelled by NYDEC. On Century's motion for summary judgment, the motion court held generally that a pro rata time on

---

**3.** The precise period of contamination is disputed. Following the motion court's summary judgment decision, there was a coverage trial as to the Rockaway MGP and one other site. The jury found that property damage at the Rockaway site commenced in 1905. The accuracy of this date or anything else that occurred at trial is not before the Court on this appeal, but the parties have provided this information in their briefs.

**4.** Century is the only remaining defendant in this case as to both these MGPs, and KeySpan had insurance through other providers thereafter until 1986.

**5.** Century claims that before 1922 the legislature prohibited the sale of stand-alone property liability coverage covering the losses at issue here. The parties stipulated at trial that insurance first became available in the marketplace in 1933.

the risk allocation formula is appropriate to determine the parties' respective obligations for the loss. This holding is not challenged on appeal. The court also held that for periods when Keyspan did not purchase insurance that was otherwise available in the marketplace, Keyspan is responsible for a share of liability attributable to that period of time. It further held that Keyspan is allocated liability for the time period between 1971 and 1982 when the Insurance Law expressly prohibited insurers from covering liability arising out of pollution or contamination. The motion court reasoned that this result was consistent with the purpose of the Insurance Law to have companies, such as Keyspan, bear the full burden of their own actions affecting the environment. These holdings are also not challenged on appeal. Lastly, the court held that except for the period of time when the legislature expressly prohibited the sale of pollution liability insurance, liability for periods of time when insurance was unavailable in the marketplace should be allocated to Century.

We begin our analysis with a review of the existing New York insurance law applicable to injuries that are continuous and occur over a period of years. These injuries frequently implicate multiple, sequential insurance policies, as well as periods of no insurance. The legal challenges raised in these cases occur because it is impossible to precisely determine what injury or damage took place during a particular policy period or during periods of no insurance. While the occurrence of some injury during the policy period will usually trigger coverage under the terms of a particular policy, the parties still face thorny issues about who bears the risk of injuries attributable to different time periods outside of those policy periods.

*Con Edison* (98 NY2d at 208) and the very recent Court of Appeals decision in *Matter of Viking Pump, Inc.* (27 NY3d 244 [2016]) make it abundantly clear that the predominant consideration in the Court's analysis of these issues is the language of the particular insurance policy. These cases are in accord with well established precedent holding that when determining a dispute over insurance coverage, courts are required to look first at the language of the policies involved (*Roman Catholic Diocese of Brooklyn v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 NY3d 139, 148 [2013]). *Con Edison* and *Viking Pump* both concerned insurance claims made for injuries that occurred over a period of time and across policy periods. *Con Edison*, as here, involved a claim for indemnity in

connection with environmental contamination cleanup. *Viking Pump* concerned personal injuries resulting from exposure to asbestos. In *Con Edison*, the Court of Appeals held that where the insurance policies provide coverage for "all sums" of liability that resulted from an accident occurring "during the policy period," a pro rata allocation based upon an insurer's time on the risk is consistent with the policy language (98 NY2d at 224 [emphasis omitted]). The specific issue before the Court was whether indemnification for liability for long-term, continuous environmental damage should be allocated among all the insurance polices that are triggered, or whether for every policy triggered by some part of the continuous injury occurring during that policy period, the insurer should be held jointly and severally liable for all of the damages.[6] The Court held that pro rata allocation was more in keeping with the terms of the particular policies than joint and several liability for each insurer. In distinction, the Court of Appeals, in reviewing different policy language, recently held in *Viking Pump*, that when a policy contains anti-stacking or noncumulation provisions, pro rata allocation of risk is not consistent with the policy language.

Where a pro rata allocation is warranted, courts applying New York law have approved the use of a time on the risk allocation formula (*see e.g. Roman Catholic Diocese*, 21 NY3d 139 [plaintiff sought indemnification for claim of long-term ongoing sexual molestation by a priest; Court of Appeals approved time on the risk proration of liability among the insurers]; *Con Edison*, 98 NY2d 208; *Serio v Public Serv. Mut. Ins. Co.*, 304 AD2d 167 [2d Dept 2003] [time on the risk applied to allocate damages in personal injury lead-paint case, as opposed to equal apportionment]; *Olin Corp. v Insurance Co. of N. Am.*, 221 F3d 307 [2d Cir 2000] [applying New York law using a pro rata time on risk formula to determine insurer's liability to indemnify for ongoing and progressive damage from pollution]; *Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.*, 73 F3d 1178

---

**6.** The mechanics of joint and several liability would permit the insured to select one triggered policy that would be responsible for the full amount of liability. The selected insurer would then be able to seek contribution from other insurers (*Roman Catholic Diocese*, 21 NY3d at 153-154 ["A joint and several allocation permits the insured to 'collect its total liability . . . under any policy in effect during' the periods that the damage occurred . . . , whereas a pro rata allocation 'limits an insurer's liability to all sums incurred by the insured during the policy period' "], quoting *Con Edison*, 98 NY2d at 222-223).

[2d Cir 1995] [applying New York Law]). Time on the risk is a simple calculation method, best expressed by a formula that multiplies the total risk by a fraction that has as its denominator the entire number of years of the claimant's injury and as its numerator the number of years within which the policy was in effect (*Olin*, 221 F3d at 321-328). In cases involving environmental contamination, the formula assumes that the amount of pollution occurring in any particular year is always the same as in every other year.[7] This assumption accounts for the uncertainty in determining the amount of pollution occurring in any particular year.

Pro rata allocation typically includes apportioning some part of the risk to the policyholder in connection with periods of no insurance. Policyholders will usually be required to bear the financial burden of periods when it could have, but chose not to, obtain insurance (*Stonewall*, 73 F3d at 1203). The rationale underlying this allocation is that these periods of no-insurance (or going bare) reflect a decision by the insured to assume or retain a risk, since it could have, but chose not to, purchase insurance to ameliorate its risk. The same rationale applies to periods of self-insurance and/or insufficient insurance, which reflect deliberate decisions by the insured (*id.* [proration to the insured is "appropriate as to years in which (the insured) elected not to purchase insurance or purchased insufficient insurance, as demonstrated by the exhaustion of its policy limits"]). Any rule to the contrary would disincentivize parties to acquire insurance when available, to cover and spread risk, and otherwise achieve cost efficiencies in the marketplace (*see Owens-Illinois, Inc. v United Ins. Co.*, 138 NJ 437, 472-473, 650 A2d 974, 992 [1994] ["Because insurance companies can spread costs throughout an industry and thus achieve cost efficiency, the law should, at a minimum, not provide disincentives to parties to acquire insurance when available to cover their risks"]). While the proration to the insured rule may be subject to exceptions,[8] the motion court's general ruling allocat-

---

7. This method of allocation, however, is not the only method by which to prorate liability. In *Con Edison* (98 NY2d at 222), the Court of Appeals recognized that there might be other methods of allocation (*see also State of N.Y. Ins. Dept., Liquidation Bur. v Generali Ins. Co.*, 44 AD3d 469 [1st Dept 2007], *appeal withdrawn* 9 NY3d 1030 [2008]).

8. In *Generali Ins. Co* (44 AD3d 469, 470-471), this Court affirmed as "manifestly fair" an equal risk allocation between insurance companies to cover a settlement, even though the damage extended over periods of no

ing certain periods of no coverage to plaintiff is not challenged in this appeal.

New York appellate courts, however, have not expressly ruled on the question presented here, which is: When the reason for the period of no insurance is that the insured could not have obtained insurance even if it had wanted to, is the risk attendant to the unavailability of insurance in the marketplace allocable to the existing, triggered insurance policies or to the insured? This coverage dispute is not unique to New York. Courts that have considered this issue, both in trying to predict New York law and in other states dealing with the same or similar insurance policy language as here, have come to different conclusions, employing different rationales.

*Stonewall* (73 F3d 1178) and *Olin* (221 F3d 307), both Second Circuit Court of Appeals cases seeking to apply New York law, have determined that an exception to proration to the insured should be made in situations where insurance is not available in the marketplace (*see also RT Vanderbilt Co., Inc v Hartford Acc. & Indem. Co.*, 2014 WL 1647135, 2014 Conn Super LEXIS 699 [2014]). Clearly, the general justification for proration to the insured, i.e., encouraging the purchase of insurance to spread risk, does not hold when there is no insurance to be had. This unavailability exception to the rule of proration to the insured largely has its genesis in the New Jersey case of *Owens-Illinois* (138 NJ 437, 650 A2d 974). The New Jersey Supreme Court, unable to find the answers to allocation in the language of the policies there at issue, looked to public interest factors for guidance, including, insofar as is relevant here, providing incentives for parties to engage in responsible conduct, avoiding disincentives to the acquisition of insurance and creating incentives that will tend to minimize the recurrence of the problems presented in the case before it (138 NJ at 471, 650 A2d at 992). In accordance with these principles, the court held:

> "A fair method of allocation appears to be one that is related to both the time on the risk and the degree of risk assumed. When periods of no insur-

---

insurance. Our decision effectively prorated no risk to the insured for periods of no insurance, because the insured was defunct and could not have financially contributed to the settlement. The facts of *Generali* are unique in that one insurer (represented by the Liquidation Bureau) seeks to have the other insurer contribute to a settlement of an underlying action, as opposed to the insured seeking indemnity. The decision was made over a strong dissent.

ance reflect a decision by an actor to assume or retain a risk, *as opposed to periods when coverage for a risk is not available*, to expect the risk-bearer to share in the allocation is reasonable" (138 NJ at 479, 650 A2d at 995 [emphasis supplied]).

Other courts have taken a contrary view of the issue (*see Sybron Transition Corp. v Security Ins. of Hartford*, 258 F3d 595 [7th Cir 2001] [applying New York Law]; *Boston Gas Co. v Century Indem. Co.*, 454 Mass 337, 371, 910 NE2d 290, 315 [2009] [expressly declining to adopt unavailability exception "because to do so would contravene the limitation of coverage in the . . . policies to liability attributable to property damage during the policy periods"]; *Crossmann Communities of N.C., Inc. v Harleysville Mut. Ins. Co.*, 395 SC 40, 66 n 16, 717 SE2d 589, 602 n 16 [2011] [rejecting unavailability exception as "exceed(ing) the trial court's authority, as the effect is to shift losses from one policy period to another in order to create coverage where none was purchased"]; *Midamerican Energy, Co. v Certain Underwriters at Lloyd's London*, 2011 WL 2011374 [Iowa Dist Ct 2011] [" 'unavailability' exception disproportionately allocate(s) damage(s) to insurers for periods of time when no coverage was agreed to or bargained for"]; *Bradford Oil Co. v Stonington Ins. Co.*, 190 Vt 330, 342, 54 A3d 983, 991 [2011] [in rejecting the availability exception the court concluded "that the reason for the absence of effective insurance is not determinative" and it is "not consistent with a pure time-on-the-risk methodology"]; *AAA Disposal Sys., Inc. v Aetna Cas. & Sur. Co.*, 355 Ill App 3d 275, 288, 821 NE2d 1278, 1290 [2005], *lv denied* 213 Ill 2d 553, 829 NE2d 786 [2005] ["it would be unfair to allocate the damages occurring during the uninsured period to an insurer that did not agree to provide coverage during that time"]). A general concept underlying these decisions is that the policies themselves did not provide coverage for the disputed periods, and the overall effect of passing that risk on to the insurance companies would be to provide free insurance coverage to the policyholders for those periods of no insurance. Some of these cases pointed out the problem with the concept of unavailability and to what extent it is a function of economic feasibility; i.e., does the cost of covering the risk at the time insurance is sought exceed the anticipated cost of the perceived risk (*Sybron*, 258 F3d at 600).

Turning now to the language of the insurance contracts at issue in this case, the parties stipulated that the terms and conditions of the policies at issue[9] are as follows:

Three Century policies (No. XCP 3860 effective 1953-1957; No. XCP 1086 effective 1955-1957; and No. XCP 3001 effective 1957-1959) state that the policy "applies only to occurrences or accidents which happen during the policy period." Three policies (No. XCP 1200 effective 1957-1961; No. XBC-1097 effective 1961-1966; and No. XBC-40530 effective 1966-1967) state that "the policy applies only to occurrences . . . during the policy period."

Two of the policies (No. XBC-41176 effective 1967-1968; No. SRL-2220 effective 1968-1969) state that the policy applies to "property damage . . . which occurs anywhere during the policy period."

The policies also have slight differences as to how "occurrences" are defined: Policy XCP-1200 defines an occurrence as "either an accident or a continuous or repeated exposure to conditions which result during the policy period in injury to or destruction of property." Policies XBC-1097 and XBC-40530 define occurrence as "either an accident happening during the policy period or a continuous or repeated exposure to conditions which . . . causes injury to or destruction of property during the policy period." XBC-41176 and SRL-2220 state that "[o]ccurence, as respects property damage, means an accident, including injurious exposure to conditions, which results, during the policy period, in property damage . . . ."

While these policies are not identical to those in *Con Edison*, and not every policy that Century issued to Keyspan contains the exact same language, they are substantially similar to those in *Con Edison*, and the variations among Century's own policies from year to year are not significant enough to affect a holistic analysis of them. None of the policies contain the anti-stacking provisions that were at issue in *Viking Pump* (27 NY3d 244).

We find that the policy language supports a conclusion that the unavailability exception to proration to the insured does not apply. As with the policies in *Con Edison*, the "all sums" policy language in the policies at bar is qualified by other

---

**9.** Two of the policies cannot be located, but the parties stipulated some facts as to them. Hence, the total number of policies addressed in this decision may not always add up to eight.

language. Each policy, despite some minor variations, provides the insured with coverage for occurrences, accidents and continuous and repeated exposure to conditions that result in damage "during the policy period." While none of the policies expressly address how to allocate liability in a situation where the underlying damage is long-term, continuous and indivisible, the fact that the policies require Century to indemnify Keyspan for occurrences, accidents, etc., "during the policy period" is consistent with allocation for time on the risk. Unavailability is an exception to time on the risk, since it allocates responsibility for periods of time when no insurance was purchased and it is, therefore, inconsistent with policy language restricting coverage to the policy period. There is no other or additional contractual language in the policy justifying this exception. There are no express contract provisions requiring the insurer to cover damages outside of the policy period when insurance is otherwise unavailable in the marketplace (*Con Edison*, 98 NY2d 208; *see also Long Is. Light. Co. v Allianz Underwriters Ins. Co.*, 301 AD2d 23, 31 [1st Dept 2002]). A related argument by Keyspan, that in issuing the original policies Century undertook to indemnify Keyspan for periods before the inception date, also simply adds language that is not in any of the policies. Keyspan's interpretations would expose Century to risks beyond those contemplated by the parties when the policies were purchased, as evidenced by the plain language of the policy (*see e.g. Henry Modell & Co. v General Ins. Co. of Trieste & Venice*, 193 AD2d 412 [1st Dept 1993]). Nor do we find that the policy provisions are in anyway ambiguous on these issues. The Court of Appeals in *Con Edison*, in considering essentially similar policy language, was able to interpret such policies as consistent with allocating risk to the insurer occurring within the policy period. These policies should be interpreted in an identical manner.

Keyspan alternatively raises certain policy arguments in support of its position, claiming that the unavailability exception is consistent with the protective purpose of liability insurance by spreading risk and transferring it from a policyholder to an insurer. In addition, Keyspan argues that there will be increased costs to consumers if it is required to share in the costs of remediation. New York courts, however, will not rewrite the terms of a policy for equitable reasons (*see Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]). Nor will they

disregard clear provisions that an insurer inserted into a policy and the insured accepted (*see Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 NY3d 157, 162 [2005]). Moreover, the spreading of industry risk through insurance is accomplished through the setting and payment of premiums for insurance, consistent with the parties' forward looking assessment of what that risk might entail. In the absence of a contract requiring such action, spreading risk should not by itself serve as a legal basis for providing free insurance to an insured.

Accordingly, the order of the Supreme Court, New York County (Saliann Scarpulla, J.), entered October 22, 2014, which, to the extent appealed from, denied defendant Century Indemnity Company's motion for partial summary judgment declaring that Century is not responsible for any part of the costs of cleanup for periods of time when insurance was unavailable before 1953 and after 1986, should be unanimously reversed, on the law, without costs, and the motion granted, and it should be so declared.

MAZZARELLI, J.P., FRIEDMAN and MOSKOWITZ, JJ., concur.

Order, Supreme Court, New York County, entered October 22, 2014, reversed, on the law, without costs, the motion granted, and it is declared that defendant Century Indemnity Company is not responsible for any part of the costs of cleanup for periods of time where insurance was unavailable before 1953 and after 1986.