STEIN, J.
On this appeal, we once again venture into the complex realm of long-tail insurance claims. The particular question before us is whether, under the "pro rata time-on-the-risk" method of allocation, defendant Century Indemnity Company is liable to its insured, plaintiff KeySpan Gas East Corporation, for years outside of its policy periods when there was no applicable insurance coverage available on the market. For the reasons explained herein, we hold that KeySpan, not Century, bears the risk for those years during which such coverage was unavailable. We, therefore, affirm the order of the Appellate Division.
I.
The liability underlying this insurance dispute emanates from environmental contamination caused by manufactured gas plants (MGPs) owned and operated by KeySpan's predecessor, Long Island Lighting Company (LILCO), in Rockaway Park and Hempstead. Gas production at the sites began in the late 1880s and early 1900s. After operations ceased decades later, the New York State Department of Environmental Conservation (DEC) determined that there had been long-term, gradual environmental damage at both sites due to contaminants, such as tar, *212 **116 seeping into the ground and leeching into groundwater. The DEC required KeySpan to undertake costly remediation efforts, which were apparently concluded at the Hempstead and Rockaway Park sites in 2002 and 2012, respectively.
Between 1953 and 1969, Century issued eight excess liability insurance policies to LILCO covering property damage. For the purposes of this appeal, it is undisputed that environmental contamination at the sites occurred gradually and continuously before, during, and after the Century policy periods. It is also uncontroverted that the environmental contamination that occurred in any given year is unidentifiable and indivisible from the total resulting damages.
KeySpan eventually commenced this action, seeking a declaration of coverage and determination of liability owed under a number of insurance policies, including the policies issued by Century. This litigation has spanned decades and involves multiple insurers, but only Century's policies are relevant to this appeal. In 2014, Century moved for partial summary judgment declaring that it was "not responsible for any portion of the property damage at the Rockaway Park and Hempstead sites that occurred outside the Century policy periods," and that "[a]ny covered costs are to be allocated pro rata over the entire period during which property damage at each site occurred." In opposition, KeySpan did not dispute that pro rata time-on-the-risk allocation controlled under the relevant policies, but argued that Century's pro rata share should not be reduced by factoring in the years in which pollution property damage liability insurance was unavailable. According to KeySpan, Century's expert had opined that such coverage was not available to utilities until approximately 1925, and that a "sudden and accidental pollution exclusion" was later generally adopted by the insurance industry sometime in or after October 1970. Thus, KeySpan argued, the allocation should not take into account any years prior to the availability, or after the unavailability, of the applicable coverage.
Supreme Court partially granted Century's motion, holding that liability should be allocated to KeySpan for the years in which it elected to self-insure and in which the legislature mandated a pollution exclusion in liability policies ( 46 Misc.3d 395, 402, 998 N.Y.S.2d 781 [Sup. Ct., New York County 2014] ; see former Insurance Law § 46[13], [14] ). However, the court denied the motion with respect to those years in which the relevant insurance coverage was otherwise unavailable in the marketplace ( 46 Misc.3d at 402, 998 N.Y.S.2d 781 ). Upon Century's appeal, the Appellate Division reversed Supreme Court's order to the extent appealed from, holding that "under the insurance policies at issue, Century does not have to indemnify Key[S]pan for losses that are attributable to time periods when liability insurance was otherwise unavailable in the marketplace" ( 143 A.D.3d 86, 88, 37 N.Y.S.3d 85 [1st Dept. 2016] ). Thereafter, the Appellate Division certified to us the question of whether its order was properly made.
II.
Before stating and addressing the parties' arguments, we must place them in context. As we posited in our most recent foray into an insurance allocation dispute, long-tail claims present unique difficulties (see Matter of Viking Pump, Inc., 27 N.Y.3d 244, 255, 52 N.E.3d 1144 [2016] ). In such cases, the injury-producing harm is gradual and continuous and typically spans multiple insurance policy periods or, as here, implicates years during which insurance coverage was in place, as well as *213 **117 years for which no coverage was purchased. In these situations, courts across the country have been tasked with determining the appropriate distribution of liability among various insurers and between the insurers and the policyholder.
In general, two primary methods of allocation are used by the courts to apportion liability across multiple policy periods: all sums and proration. All sums allocation "permits the insured to collect its total liability ... under any policy in effect during the periods that the damage occurred, up to the policy limits" ( id. [internal quotation marks and citations omitted]; see Consolidated Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 222, 746 N.Y.S.2d 622, 774 N.E.2d 687 [2002] ). By contrast, under pro rata allocation, assuming complete coverage, "an insurer's liability is limited to sums incurred by the insured during the policy period; in other words, each insurance policy is allocated a 'pro rata' share of the total loss representing the portion of the loss that occurred during the policy period" ( Matter of Viking Pump, 27 N.Y.3d at 256, 33 N.Y.S.3d 118, 52 N.E.3d 1144 ; see Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co. of Pittsburgh, Pa., 21 N.Y.3d 139, 154, 969 N.Y.S.2d 808, 991 N.E.2d 666 [2013] ; Consolidated Edison, 98 N.Y.2d at 223, 746 N.Y.S.2d 622, 774 N.E.2d 687 ). Pro rata shares are often, although not exclusively, calculated based on an insurer's "time on the risk," a fractional amount corresponding to the duration of the coverage provided by each insurer in relation to the total loss (see Consolidated Edison, 98 N.Y.2d at 225, 746 N.Y.S.2d 622, 774 N.E.2d 687 ; Stonewall Ins. Co. v. Asbestos Claims Mgt. Corp., 73 F.3d 1178, 1202 [2d Cir1995], op . mod . on denial of reh . 85 F.3d 49 [2d Cir.1996] ).
In New York, we have not adopted a strict pro rata or all sums allocation rule. Rather, the method of allocation is governed foremost by the particular language of the relevant insurance policy (see Matter of Viking Pump, 27 N.Y.3d at 257, 33 N.Y.S.3d 118, 52 N.E.3d 1144 ). Thus, applying principles of contract interpretation, we held in Consolidated Edison Co. of N.Y. v. Allstate Ins. Co. that policy language restricting an insurer's liability to all sums incurred and occurrences happening "during the policy period" generally supports a pro rata allocation ( 98 N.Y.2d at 224, 746 N.Y.S.2d 622, 774 N.E.2d 687 ). As we explained, the policies at issue there contained such language providing "for liability incurred as a result of an accident or occurrence during the policy period, not outside that period," and we concluded that "[p]roration of liability ... acknowledges the fact that there is uncertainty as to what actually transpired during any particular policy period" ( id. ).
We subsequently distinguished the policy language in Consolidated Edison from that presented in Matter of Viking Pump, Inc. and held, in the latter case, that the presence of noncumulation and prior insurance provisions "plainly contemplate that multiple successive insurance policies can indemnify the insured for the same loss or occurrence" and, therefore, require all sums allocation ( 27 N.Y.3d at 261, 33 N.Y.S.3d 118, 52 N.E.3d 1144 ). Such provisions are inconsistent with pro rata allocation because "the very essence of pro rata allocation is that the insurance policy language limits indemnification to losses and occurrences during the policy period," such that no two insurance policies indemnify the same loss or occurrence absent overlapping or concurrent policy periods ( id. ).
Where policy language indicates allocation by the pro rata method and gaps in coverage exist, the question arises as to which party-the insurer or the policyholder-bears *214 **118 the risk for periods of time in which no applicable coverage was in place. While "most courts engaging in pro rata allocation require the policyholder to participate in the allocation to some extent" with respect to periods of non-coverage ( Boston Gas Co. v. Century Indem. Co., 454 Mass 337, 370, 910 N.E.2d 290, 315 [2009] ), courts are divided with regard to whether a policyholder should be held responsible for those periods of time when the relevant coverage was not offered for sale on the market.
When using a pro rata time-on-the-risk allocation, a number of jurisdictions have declined to place the policyholder "on the risk" if insurance was unavailable. These jurisdictions recognize the "unavailability rule" or, stated differently, an "unavailability exception" to the general rule that a policyholder is self-insured and on the risk for periods of time when insurance coverage was not obtained (see R.T. Vanderbilt Co., Inc. v. Hartford Acc. and Indem. Co., 171 Conn.App. 61, 129, 156 A.3d 539, 577 [Conn. App. Ct. 2017], cert . granted 327 Conn. 923, 171 A.3d 63 [2017] ; see Wooddale Builders, Inc. v. Maryland Cas. Co., 722 N.W.2d 283, 297 [Minn. 2006] ; Mayor and City Council of Baltimore v. Utica Mut. Ins. Co., 145 Md.App. 256, 313 n 54, 802 A.2d 1070, 1104 n. 54 [Md. Ct. Spec. App. 2002] ; Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co., 177 F.3d 210, 231 [3d Cir. 1999] ; Stonewall Ins. Co, 73 F.3d at 1203 ). Under this approach, a policyholder bears the risk for periods of time when it elected not to purchase available insurance, but not for those years when insurance was unavailable (see 15 Steven Plitt et al., Couch on Insurance 3d § 220:31). Application of this rule serves to reduce the number of years included in the overall proration calculation, thereby increasing the shares of liability attributable to an insurer for each year in which a policy was in effect.
Other courts have rejected the unavailability rule. These courts have held that a policyholder is on the risk for periods of non-coverage, regardless of whether the lack of insurance coverage was attributable to a voluntary decision to self-insure or to an inability to obtain coverage (see Boston Gas Co., 454 Mass. at 371, 910 N.E.2d at 315 ; AAA Disposal Sys., Inc. v. Aetna Cas. and Sur. Co., 355 Ill.App.3d 275, 287, 821 N.E.2d 1278, 1290, 290 Ill.Dec. 704 [2005] ; Sybron Transition Corp. v. Sec. Ins. of Hartford, 258 F.3d 595, 598-600 [7th Cir.2001] ). Significantly, as the Appellate Division recognized here, the applicability of the unavailability rule is a matter of first impression in New York.
III.
KeySpan does not dispute that it bears the risk for those years in which property damage insurance was available to, but not purchased by, LILCO and it was, therefore, voluntarily self-insured. KeySpan argues, however, that it should be responsible only for those years in which insurance was available in the marketplace. Thus, Keyspan-supported by various amici-urges us to adopt the unavailability rule and hold that, in a pro rata time-on-the-risk allocation, liability should not be allocated to the policyholder for years in which insurance was unobtainable, either because it had not yet been offered by insurers or because the industry had adopted a pollution exclusion.
In response, Century argues that the unavailability rule is inconsistent with the policy language that mandates pro rata allocation in the first instance. Century further contends that the imposition of liability on an insurer for damages resulting from occurrences outside the policy period would contravene the very premise underlying pro rata allocation. We agree.
*215 **119 "It is well established that[,] '[i]n determining a dispute over insurance coverage, we first look to the language of the policy' " ( Roman Catholic Diocese of Brooklyn, 21 N.Y.3d at 148, 969 N.Y.S.2d 808, 991 N.E.2d 666, quoting Consolidated Edison, 98 N.Y.2d at 221, 746 N.Y.S.2d 622, 774 N.E.2d 687 ). Here, while the insurance policies at issue do not speak directly to allocation in the context of long-tail claims, each of the policies contains language (with minor variances) limiting the insurer's liability to losses and occurrences happening "during the policy period." As previously noted, this Court held in Consolidated Edison that pro rata allocation-rather than all sums allocation-was more consistent with such policy language because "the policies provide indemnification for liability incurred as a result of an accident or occurrence during the policy period, not outside that period" ( 98 N.Y.2d at 224, 746 N.Y.S.2d 622, 774 N.E.2d 687 ).*
It follows from our holding in Consolidated Edison that the unavailability rule is inconsistent with the contract language that provides the foundation for the pro rata approach-namely, the "during the policy period" limitation-and that to allocate risk to the insurer for years outside the policy period would be to ignore the very premise underlying pro rata allocation ( id. ). Indeed, such an approach could, once a policy is triggered, impose liability in perpetuity (or retroactively to periods prior to coverage) on an insurer who issued insurance coverage for only a limited number of years, thereby eviscerating much of the distinction between pro rata and all sums allocation. In the context of continuous harms, where the contamination attributable to each policy period cannot be proved and we draw from the contract language to distribute the harm pro rata across the policy periods, it would be incongruous to include harm attributable to years of non-coverage within the policy periods.
Further, application of the unavailability rule to an insurance policy that directs pro rata allocation, either expressly or under our interpretation in Consolidated Edison, 98 N.Y.2d at 224, 746 N.Y.S.2d 622, 774 N.E.2d 687 ), would effectively provide insurance coverage to policyholders for years in which no premiums were paid and in which insurers made the calculated choice not to assume or accept premiums for the risk in question. However, "[a]s an insurer, the defendant is free to select its risks" and to exclude certain risks ( Vander Veer v. Continental Cas. Co., 34 N.Y.2d 50, 52, 356 N.Y.S.2d 13, 312 N.E.2d 156 [1974] ). Moreover, such a rule would contravene the reasonable expectations of the average insured, who would not expect to receive coverage without regard to the number of years for which it purchased applicable insurance (see generally Cragg v. Allstate Indem. Corp., 17 N.Y.3d 118, 122, 926 N.Y.S.2d 867, 950 N.E.2d 500 [2011] ).
To be sure, some courts have adopted the unavailability rule in the pro rata context, but they have done so by relying heavily on public policy concerns and a desire to maximize resources available to claimants against the policyholder (see e.g. Stonewall Ins. Co., 73 F.3d at 1203 ; R.T. Vanderbilt Co., Inc., 171 Conn.App. at 136, 156 A.3d at 581 ). By contrast, those courts which have rejected the unavailability rule have focused their analysis on the policy language that serves as the foundation for pro rata allocation (see **120 *216 Boston Gas Co., 454 Mass. at 371-372, 910 N.E.2d at 315 ; Sybron Transition Corp., 258 F.3d at 600 ), an approach that is more consistent with New York law (see Consolidated Edison, 98 N.Y.2d at 221, 746 N.Y.S.2d 622, 774 N.E.2d 687 ).
In Sybron Transition Corp., the Seventh Circuit reasoned that "[t]he whole idea of a time-on-the-risk calculation is that any given insurer's share reflects the ratio of its coverage (and thus the premiums it collected) to the total risk. The full risk is not affected by whether insurance is available later" ( 258 F.3d at 600 ). That court declined to require an insurer who furnished coverage during a specific period of time before the magnitude of a risk was recognized "to furnish, for nothing, an additional period of high-price coverage" outside of the policy period because the insured, not the insurer, created the risk of loss and there was no contractual basis to impose the consequences of that risk "on an underwriter unlucky enough to insure an early slice of the risk" ( id. at 600 ). Likewise, the Supreme Court of Massachusetts declined to apply the unavailability rule in the pro rata context "because to do so would contravene the limitation of coverage in the Century policies to liability attributable to property damage during the policy periods" ( Boston Gas Co., 454 Mass at 371, 910 N.E.2d at 315 ). We agree with the reasoning of these courts.
Similarly, here, we concur with the Appellate Division that "the spreading of industry risk through insurance is accomplished through the setting and payment of premiums for insurance, consistent with the parties' forward[-]looking assessment of what that risk might entail," and that, "[i]n the absence of a contract requiring such action, spreading risk should not by itself serve as a legal basis for providing free insurance to an insured" ( 143 A.D.3d at 97, 37 N.Y.S.3d 85 ). Moreover, to the extent KeySpan claims that it is inequitable to allocate the risk to the policyholder for years when coverage was unavailable, even those courts that have adopted the unavailability rule have recognized that, "[f]rom an equitable standpoint, either party can justifiably be assigned responsibility for ongoing [injuries arising after policy exclusion]. The policyholder is the one who allegedly caused the injury and, therefore, who ultimately will be financially responsible should insurance prove insufficient" ( R.T. Vanderbilt Co., Inc., 171 Conn App at 134, 156 A.3d at 579-580 ). In any event, notwithstanding competing policy concerns, "this [C]ourt may not make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation" ( Breed v. Insurance Co. of N. Am., 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 [1978] ).
Ultimately, because "the very essence of pro rata allocation is that the insurance policy language limits indemnification to losses and occurrences during the policy period" ( Matter of Viking Pump, 27 N.Y.3d at 261, 33 N.Y.S.3d 118, 52 N.E.3d 1144 ; see Consolidated Edison, 98 N.Y.2d at 224, 746 N.Y.S.2d 622, 774 N.E.2d 687 ), the unavailability rule cannot be reconciled with the pro rata approach. We, therefore, reject application of the unavailability rule for time-on-the-risk pro rata allocation.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Order affirmed, with costs, and certified question answered in the affirmative.
Judges Rivera, Fahey, Wilson and Feinman concur. Chief Judge DiFiore and Judge Garcia took no part.

KeySpan's alternative argument that certain "other insurance" clauses in the policies constitute noncumulation clauses and, therefore, mandate all sums allocation, is not properly before us on this appeal.